**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WAYNE E. CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-635-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION**

Plaintiff Wayne E. Crawford seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416 (i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 8].

**Introduction**

In social security cases, plaintiff bears the burden of establishing a prima facie case of disability at steps one through four of the five step evaluation.[2] Nielson v. Sullivan, 992 F.2d 1118,

---

[1] Plaintiff's application for disability insurance benefits and SSI was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") James Jordan was held on May 4, 2006. [R. 244]. Judge Jordan retired prior to issuing a decision in this case. The case was reassigned to Judge Lance McClain. Judge McClain conducted a second hearing on March 28, 2007. [R. 288]. By decision dated June 22, 2007, Judge McClain entered the findings that are the subject of this appeal. [R. 20]. The Appeals Council denied plaintiff's request for review on August 29, 2008. [R.6]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and

1120 (10th Cir. 1993). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of his alleged disability. 20 C.F.R. § 404.1512(b), 416.912. A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a), 416.913.

## Background

Plaintiff is 50 years old, born on February 27, 1957. [R. 174, 292]. He has an eleventh grade education. [R. 292]. Plaintiff was married to Darshell Calhoun from 1976 until 1988. In 1996, he married Joyce Moore. The marriage ended in divorce one month later. [R. 65]. He is currently unmarried. Plaintiff is the father of one son and two daughters. [R. 219]. He was convicted of arson and incarcerated in November 2002. [R. 260]. Plaintiff was released from prison on July 23, 2004. While incarcerated, plaintiff tripped and fell on a sidewalk, fracturing his left femur bone. The

---

(5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished), (citing Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail)).

Department of Corrections immediately transported plaintiff to Atoka Memorial Hospital for emergency treatment. [R. 125]. On July 25, 2003, he was transferred to University Hospital in Oklahoma City for surgical "intramedullary rod placement."[3] [R. 142]. On August 1, 2003 he was admitted to Lindsay Municipal Hospital for physical therapy to regain weight bearing touchdown on his left leg and hip. [R. 142]. He was discharged on August 15, 2003 and transferred back to the Department of Corrections facility in Atoka, Oklahoma. [R. 142]. On December 9, 2004, plaintiff was in an automobile accident in Tulsa. He reported that he "woke up outside his car" and walked to the emergency room at Tulsa Regional Medical Center, where he was diagnosed and treated for cervical strain. [R. 157].

Plaintiff has a work history from 1990 to 2004, performing various minimum wage unskilled labor. [R. 71-86]. This labor includes employment in 1989 at a coffee shop at St John's Hospital in Springfield, Illinois; in 1989 as a steel cutter for Smithey, Inc. in Tulsa; in 1990 at a nursing home operated by Oklahoma Methodist Manor, in Tulsa; in 1991 doing laundry for Western Uniforms, in Tulsa; in 1992 doing temporary work for Tulsa Manpower; in 1993 as a sales clerk for Snows Furniture, in Tulsa; in 1997 as a food server and cleaner for McDonalds Restaurant in Springfield, Illinois; in 1997 as a cleaner for Holiday Inn Express in Springfield, Illinois; in 2002 as a spring cutter for L&P Manufacturing, in Mississippi; and in 2002 doing temporary work for Manpower International, in Tulsa.[4] [R. 71-80].

---

[3] Intramedullary rods are used to align and stabilize a bone fracture. It consists of a metal rod inserted into the bone marrow canal in the center of a long bone of an extremity, such as a femur or tibia. The rod shares the load with the bone, rather than entirely support the bone. See, www.orthopedics.about.com.

[4] Plaintiff testified that he has also performed other part time work over the past 15 years including press work, roofing, painting (buses, houses and cars), auto mechanic, sheet rocker, and

Plaintiff claims the onset date of his disability as July 23, 2004, the date of his release from prison. [R. 65]. He alleges an inability to work because of injuries sustained from the two accidents stated above. [R. 261]. Specifically, he claims impairments as to his left hip, leg, knee, back, shoulder, and headaches. [R. 174, 182, 294, 303-05].

In assessing plaintiff's qualification for disability benefits, the ALJ found that plaintiff has not engaged in any substantial gainful activity since July 23, 2004; he met the insured status requirements through December 31, 2007; his severe impairments are hypertension and post status repair of femur fracture with pinning; his headaches and left shoulder pain are nonsevere. The ALJ found that plaintiff had only infrequent complaints of headaches since the alleged onset date, that plaintiff had full range of motion and no tenderness in his left shoulder, and that his headaches and shoulder pain were not severe within the meaning of the regulations. [R. 22]. The ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments; and he has the residual functional capacity (RFC) to perform light exertional work.[5] However, the RFC assessment excluded any heavy lifting or exertion to accommodate plaintiff's untreated hypertension and his left femur fracture. The ALJ evaluation concluded at step four, by finding plaintiff capable of performing his past relevant work as a motel cleaner and fast food worker because these jobs do not require the performance of work related activities precluded by the RFC. [R. 26]. Thus, the ALJ found that plaintiff was not disabled within

---

short order cook [R. 251-259].

[5] As the ALJ found, light exertion includes the capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours out of an 8-hour workday (with normal breaks) and sit at least 6 hours out of an 8-hour workday (with normal breaks). [R. 23].

4

the meaning of the SSA.  [R. 26-7].

## Issues

Plaintiff raises three issues on appeal:

(1)   Whether the ALJ failed to perform a proper determination at step four of the sequential evaluation process.

(2)   Whether the ALJ failed to perform a proper analysis of the opinion of the treating physician.

(3)   Whether the ALJ failed to perform a proper credibility determination.

[Dkt. # 18 at 2].

## Discussion

The Court's role in reviewing the decision of the Commissioner under 42 U.S.C.§ 405 (g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

As his first assignment of error, plaintiff contends the ALJ failed to propound a proper

hypothetical question to the vocational expert and to properly evaluate the vocational expert's testimony, leading the ALJ to erroneous conclude at step four that plaintiff could perform his past work as a motel cleaner and fast food worker. At the hearing, the ALJ propounded the following hypothetical question to the vocational expert:

> ALJ:   Okay. So then if I give you a hypothetical question, you have an individual who is the same age, education, vocational history of this claimant who is limited to light work, can occasionally carry 20 pounds, frequently carry 10 pounds. Stand and walk at least six hours out of an eight hour work day with normal breaks and sit at least six hours out of an eight hour work day with normal breaks. That would leave the cleaner job only, is that correct?
>
> V.E.   The cleaner and the fast food worker, Your Honor.

[R. 316]. Plaintiff contends the ALJ's hypothetical question was improper because it failed to consider all of plaintiff's impairments, including his left shoulder injury limiting his reach, head injury and vascular brain tumor causing headaches, degenerative changes from his neck injury, and ruptured discs from his back injury. [Dkt. # 18 at 3]. The Court disagrees.

In formulating his hypothetical question and in determining plaintiff's RFC, the ALJ did not place any restrictions due to plaintiff's alleged headaches and shoulder injury because he found that they were not limiting conditions. [R. 22]. The ALJ provided evidentiary support for his findings.

> The claimant testified that he has headaches but the record shows only infrequent complaints of headaches since the alleged onset date. The claimant has a history of injury to the left shoulder but during the consultative examination performed in January 2005 full range of motion was present (Exhibit 4F). The claimant presented to Natasha Siffrard, M.D., in January 2007 for evaluation of joint pain. No tenderness was present in the left shoulder and range of motion was full (Exhibit 8F). Thus, the undersigned finds the claimant's complaints of headaches and shoulder pain are not severe within the meaning of the regulations.

[R. 22]. He also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listing impairments in 20 CFR Part 404, Subpart P, Appendix

1. Plaintiff has failed to offer any substantiating evidence that degenerative changes to plaintiff's neck and back caused any limitation in his capacity to perform light exertional work. The ALJ determined that plaintiff's physical impairments did not cause such limitation. He found:

> The claimant had normal range of motion in the cervical spine and normal trunk mobility. Isometric manual muscle testing of the upper and lower extremities equaled 5/5 bilaterally.

[R. 25]. Plaintiff's upper body strength was tested again on January 11, 2005 with similar results. The ALJ found:

> The claimant was able to move about the examination room without difficulty. . . Muscle testing revealed no wasting or atrophy and grip was strong and equal bilaterally. Both knees were normal on examination with no evidence of effusion. Other than elevated blood pressure, the remainder of the examination was normal (Exhibit 4F).

[R. 25]. The ALJ also found that on February 15, 2006, regardless of plaintiff's complaint of headaches he was not taking pain medication and his "physical examination was normal." [R. 25]. He also found that on a February 24, 2006 follow-up visit, although plaintiff complained of hip pain and headaches, and his blood pressure was "slightly elevated at 154/92," he was prescribed only a none prescription pain reliever. [R. 25]. The ALJ reviewed the examination notes prepared by Dr. Siffrard on January 4, 2007, when she evaluated his hip, knee, shoulder and hand pain. In finding that these combined impairments were not disabling, the ALJ relied on Dr. Siffrard's objective findings. The ALJ set forth the relevant portion of her examination notes:

> He exercised by walking daily. On examination, no tenderness was present in the spine and full range of motion was present. The claimant also had full range of motion in the upper and lower extremities without pain or tenderness with the exception of moderate pain with motion of the left hip.

[R. 25]. The Court finds that the ALJ's determination that plaintiff's impairments or combination

of impairments do not limit his ability to work, is supported by substantial evidence. The ALJ's assessment of plaintiff's RFC is consistent with that of the physical RFC assessment made by the consultative examiner on January 24, 2005. [R. 181-188]. The hypothetical question propounded to the vocational expert is also consistent with the ALJ's findings as to plaintiff's RFC. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. He gave specific evidentiary reasons to support his conclusion that plaintiff had the RFC to perform light exertional work. The ALJ then turned to the vocational expert for her expert opinion, which she gave after a review of the exertional level of plaintiff's past employment. In completing his evaluation at step four, the ALJ stated:

> The vocational expert stipulated that the claimant's past relevant work as a cleaner was a light exertion job with a skilled vocational preparation (SVP) of 2 and was unskilled; and fast food worker was a light exertion job with an SVP of 2, unskilled. The vocational expert testified that in consideration of the claimant's residual functional capacity, he would be able to perform his past relevant work as a fast food worker and cleaner. The undersigned finds this testimony to be credible and the undersigned accepts this opinion. Further, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

[R. 26]. There is no evidence in the record to support plaintiff's allegations of disabling pain in his shoulder, head, neck and back. Plaintiff's testimony alone cannot establish the existence of disabling pain. See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). The Court further notes that although plaintiff claimed during the second hearing that his disability was caused by injury to his left shoulder, head, neck, and back as a result of a vehicle collision occurring in Tulsa on December 9, 2004 [R. 303-305], the record shows that plaintiff neglected to either mention the vehicle accident or any purported physical injury caused by that accident at the first administrative hearing conducted in this case on May 4, 2006 before Judge James Jordan. [R. 244-287]. Plaintiff first mentioned this

lingering physical impairment at the second administrative hearing conducted on March 28, 2007, before the ALJ who authored the decision under review. [R. 288-319].

Since this Court finds that substantial evidence supports the ALJ's determination at step four, any additional testimony by the vocational expert was not necessary. See, e.g., Chambers v. Charter, 76 F.3d 392 (10th Cir. 1996) (unpublished). Thus, an attack on the completeness of the ALJ's hypothetical question is without merit. Even if plaintiff's claimed limitations are fully credited, the record supports the ALJ's finding that he retained the physical capacity to perform his past light exertion work. As previously stated, at step four, the plaintiff bears the burden of proving he cannot return to his past relevant work, either as he performed it or as it is performed in the national economy. The ALJ did not error in finding that plaintiff failed to meet his burden.

Plaintiff also contends the ALJ erred by not entering findings that comply with the requirements of Winfrey v. Chater, 92 F.3d 1017, 1023-26 (10th Cir. 1996). In Winfrey, the court set forth three phases the ALJ must address in making a determination at step four. The first phase is an evaluation of plaintiff's RFC. The ALJ in this instance determined that plaintiff had the RFC to perform light exertion, unskilled work. [R. 23]. The second phase requires an examination of the demands of the plaintiff's past relevant work. The ALJ in this instance determined that plaintiff's past relevant work as a motel cleaner and fast food worker involved light exertion, unskilled work. [R. 26]. The third phase is a determination whether the plaintiff has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. Specific findings are required in all phases. As shown above, the ALJ concisely set forth the objective medical evidence to support his determination that plaintiff could perform light exertion unskilled work. Those findings are clearly supported by substantial evidence of record. The Court

finds that the ALJ satisfied the specific findings requirement in <u>Winfrey</u> as well. Moreover, plaintiff does not articulate any specific objection to the ALJ's findings as to each of the three phases of evaluation. Thus, plaintiff's conclusory allegation that the ALJ violated <u>Winfrey.</u> is insufficient to warrant further consideration by the Court.

Plaintiff also claims the ALJ erred in ignoring an unfavorable answer by the vocational expert that a person requiring the use of a cane to ambulate would be unable to perform either of plaintiff's past relevant work. [Dkt. # 18 at 4]. The Court disagrees.

The ALJ did not ignore the vocational expert's testimony regarding plaintiff's use of a cane. To the contrary, the ALJ found that plaintiff's testimony regarding his dependency on a cane to ambulate was not credible. First, the ALJ acknowledged plaintiff's testimony;

> He testified that the cane was prescribed and that he needs the cane for support because his knee 'goes out' and causes him to fall. He has difficulty walking on uneven surfaces or when climbing stairs.

[R. 24]. The ALJ entered specific findings supporting his determination that plaintiff could perform his past relevant work with only minimal use of a cane. First the ALJ found that following injury to his leg, plaintiff received physical therapy for a full year and that he met his long term therapy goals. The ALJ stated:

> The record reflects that the claimant has a history of surgical treatment for a fracture of the left hip in July 2003, at which time he was incarcerated. The claimant actively participated in a course of physical therapy beginning December 2004. The claimant was discharged from therapy January 31, 2005, after having met all long-term therapy goals. The claimant had <u>normal range of motion</u> in the cervical spine and <u>normal trunk mobility</u>. Isometric manual muscle testing of the upper and lower extremities equaled 5/5 bilaterally. It was noted that the claimant was compliant and worked diligently, and he was to continue independently with exercises at home (Exhibit 6F).

[R. 25] (emphasis added). On January 11, 2005, during a consultative examination, an agency

physician noted that plaintiff could walk without difficulty, at a normal speed, safely, with stability, and without the use of an assistive device. The ALJ stated:

> On January 11, 2005, the claimant underwent a consultative examination by G. Bryant Boyd, M.D. The claimant reported that he could not get down on his knees due to hip and leg problems but he was able to walk, stand, travel, lift, handle objects, see, hear and speak. The claimant was able to move about the examination room without difficulty. His hip appeared to drop slightly as he walked, but the claimant's gait was of normal speed, safety and stability <u>without</u> <u>an</u> <u>assistive</u> <u>device</u>. Muscle testing revealed no wasting of atrophy and grip was strong and equal bilaterally. Both knees were normal on examination with no evidence of effusion. Other than high blood pressure, the remainder of the examination was normal (Exhibit 4F).

[R. 25] (emphasis added). The ALJ also observed that on February 15, 2006, plaintiff's was treated at Capitol Community Hospital Center. The examination notes on that date indicate that plaintiff "walked without aid of a cane" and his "[p]hysical examination was normal." [R. 25]. The ALJ reviewed the entire record, including the January 4, 2007 "recommended use of a cane on the left side" by Dr. Siffrard and determined that, regardless of this entry, plaintiff was able to walk without assistance. Specifically, the ALJ found:

> A review of the claimant's medical records reflects that the claimant's femur fracture has healed and that he is able to sit, stand and walk in order to perform work-related activities. Although the undersigned notes that use of a cane was recently recommended, the record reflects that the claimant is able to ambulate without assistance, with a normal safety and speed. The claimant has full use of his upper extremities with good grip strength and full range of motion in the spine. The claimant has stated on numerous occasions that he is able to walk for exercise and walks on a daily basis.

[R. 26]. Accordingly the Court finds that the ALJ did not err in failing to address the vocational expert's answer regarding plaintiff's use on a cane to ambulate, because substantial evidence supports the ALJ's determination that plaintiff could ambulate without the use of any assistive advice. The ALJ need include in his hypothetical questions only those alleged impairments that the

ALJ accepts as true. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990).

As his second issue, plaintiff contends the ALJ failed to perform a proper analysis of Dr. Siffrard's recommendation that plaintiff use a cane on his left side to ambulate. The record of Dr. Siffrard's treatment notes are four pages in length. [R 219-222]. On the second page, Dr. Siffrard entered the following:

> Assessment/Plan:
> General Osteoarthrosis, Chronic
> recc use of cane on left side
> prn naprosyn

[R. 220]. The ALJ found that Dr. Siffrard's recommendation was not entitled to controlling weight. The ALJ gave specific findings to support this conclusion. The ALJ said:

> As for the opinion evidence, the undersigned finds that none of the claimant's treating or examining physicians have placed any restrictions or limitations on his ability to perform work-related activities other than the recent recommendation that he use a cane on the left side. The record shows that the claimant is able to ambulate without the cane, and that this recent examination was essentially normal other than the presence of moderate pain in the left hip. Further, the record shows that the claimant rarely takes medication for pain other than nonprescription ibuprofen.

[R. 26]. Although it is arguable whether Dr. Siffrard's recommendation rises to the level of a medical opinion, clearly her examination notes contradict any conclusion that plaintiff was dependent on a cane to ambulate. As the ALJ indicated in his decision, upon examination Dr. Siffrard opined that "no tenderness was present in the spine and full range of motion was present. The claimant also had full range of motion in the upper and lower extremities without pain or tenderness with the exception of moderate pain with motion of the left hip." [R. 25]. The only basis shown for her recommending use a cane, is Dr. Siffrard's record of plaintiff's subjective statement that he had "pain that was aggravated by prolonged walking and standing. . ." [R. 25]. The Tenth

Circuit has held that a treating physician's opinion must be given substantial weight "unless good cause is shown to the contrary." Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 513). "[A] treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." Id. In this case, the Court finds that Dr. Siffrard's recommendation was brief, conclusory and unsupported by medical evidence and, as such, was properly rejected by the ALJ. The Court further finds that the ALJ properly gave specific, legitimate reasons for rejecting Dr. Siffrard's recommendation as required by Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)).

As his final issue, plaintiff contends the ALJ failed to perform a proper credibility determination. [Dkt. # 18 at 6]. The ALJ set forth a summary of plaintiff's testimony, as follows:

> The claimant testified that he had injured his left femur and has pain in his leg, knee and hip. He goes out and walks 20-30 minutes at a time and uses a cane. He testified that the cane was prescribed and that he needs the cane for support because his knee 'goes out' and causes him to fall. He has difficulty walking on uneven surfaces or when climbing stairs. He can only sit in certain positions and on certain chairs due to discomfort. He was incarcerated from 2002-2004 for arson. The claimant watches televisions 20-30 minutes at a time and he reads western-themed books, but sometimes pain interferes with these activities. He can stand 10-15 minutes at a time. He can lift a gallon of milk with the right hand and lifts a little less with his left hand. He spends 3/4 of the day with his leg propped up. The claimant has difficulty sleeping and his muscles are tight when he first gets up. He takes a nap 3-4 days per week. The weather affects his pain and activities. There have been some periods that he couldn't leave the house for 3-4 days a month.

[R. 24-5]. The ALJ did make a credibility determination in his decision. He stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[R. 25]. As detailed above, the ALJ articulated the evidence he relied on to show that regardless of

the injuries sustained by plaintiff from his fall in July 2003 and his vehicle accident in December 2004, plaintiff physically retained the functional ability to perform light exertional work. Plaintiff relies on an x-ray finding of spondylosis and degenerative changes, the asymmetrical lower limb measurement, decreased ROM of the cervical spine, narrowing of the left hip joint, with tenderness and painful ROM, as objective evidence to substantiate plaintiff's subjective testimony of pain. As discussed above, and irrespective of this medical evidence, the ALJ correctly found that these physical conditions have not been medically shown to prevent plaintiff from performing light exertional work. The ALJ's overall conclusion was that plaintiff can ambulate without a cane, and is otherwise essentially normal other than moderate pain in the left hip. [R. 26]. Because the plaintiff is not challenging the accuracy of the medical records relied on by the ALJ, the Court finds the ALJ provided substantial evidence to support his findings on the issue of plaintiff's credibility. Further, from a *de novo* review of the entire record the ALJ's credibility determination is clearly supported by substantial evidence, including plaintiff's own testimony that he takes daily walks, as recommended by his physical therapist. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). Such a link exits here.

## Conclusion

The Court finds that there is substantial evidence in the record to support the ALJ's decision. The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 26th day of March, 2010.

*[signature]*
T. Lane Wilson
United States Magistrate Judge